IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | CRIMINAL NO. TDC-09-291 |
| v. | * | |
| | * | |
| MARGENTINA ESTHER PINILLA, | * | |
| | * | |
| | * | |
| Defendant. | * | |
| | * | |
| | ****** | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its undersigned counsel, hereby files this memorandum in anticipation of the sentencing of Defendant Margentina Esther Pinilla ("Pinilla" or the "Defendant"). The Defendant's sentencing is scheduled for July 22, 2024, at 11 a.m. ECF 94.

On April 30, 2024, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the Defendant pled guilty to Count One of Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. § 846, and Count Two of Possession with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), of the Superseding Information (ECF 84). ECF 90. As part of the Defendant's written Plea Agreement (ECF 91), the parties stipulated and agreed that a sentence of 60 months of imprisonment is the appropriate disposition of this case. The Government respectfully requests that the Court sentence the Defendant to **60 months of imprisonment, to be followed by four years of supervised release**. The Government believes that any lesser sentence would not adequately reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes from the Defendant.

I. **Procedural Background**

On May 27, 2009, a federal grand jury returned a sealed indictment charging the Defendant with conspiracy to distribute heroin, in violation of 21 U.S.C. § 846, and possession with intent to distribute heroin, in violation of 21 U.S.C. § 841.  ECF 1 (Indictment).  That same day, U.S. Magistrate Judge Charles B. Day also issued a warrant for the Defendant's arrest.  ECF 4. The Defendant, who was born in Panama and is a naturalized U.S. citizen, moved back to Panama around 2012 and remained there until she returned to the U.S. in 2021.  ECF 95 (Presentencing Report "PSR"), ¶¶ 46–47.  For about a year prior to her arrest in 2023, the Defendant resided in Beltsville, Maryland.  *Id.* ¶ 48.

On July 19, 2023, the Defendant's initial appearance and arraignment were held before U.S. Magistrate Judge Gina L. Simms.  ECF 53.  The Defendant consented to detention, without prejudice.  ECF 56.

On December 8, 2023, the Defendant filed a motion to suppress evidence.  ECF 72.  The Defendant subsequently withdrew that motion on April 2, 2024.  ECF 81.  On April 8, 2024, the Court dismissed the Defendant's motion as moot.  ECF 82.

On April 30, 2024, pursuant to a written Plea Agreement (ECF 91), the Defendant appeared before this Court and pled guilty to Counts One and Two of the Superseding Indictment.  ECF 90. Following the Defendant's guilty plea, the Court directed the U.S. Probation Office ("Probation") to prepare a PSR (ECF 95), which was filed on July 1, 2024.

II. **Stipulated Statement of Facts**

In the Plea Agreement (ECF 91-1), the parties stipulated and agreed that, if this case had proceeded to trial, the Government would have proven the following facts beyond a reasonable doubt:

Between at least September 2008 and May 2009, in the District of Maryland and elsewhere, the defendant, **MARGENTINA ESTHER PINILLA ("PINILLA")**, did knowingly combine, conspire, confederate, and agree with co-defendant **Christina Arechiga ("Arechiga")**, **Co-Conspirator 1 ("Co-Conspirator 1")**, and **Co-Conspirator 2 ("Co-Conspirator 2")**, and others, to distribute and possess with the intent to distribute at least 1 kilogram, but less than 10 kilograms, of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance.

**PINILLA** and **Co-Conspirator 1** worked together to obtain heroin from a source of supply in California.  **PINILLA** and **Co-Conspirator 1** would then sell the heroin to customers in the Washington DC metropolitan area and New York.  In September 2008, **PINILLA** contacted **Co-Conspirator 2** in order to arrange the purchase of heroin.  In December 2008, **Co-Conspirator 2** flew from California to Prince George's County, Maryland, in order to meet with **PINILLA** and **Co-Conspirator 1** to formalize their arrangement.  It was estimated that **PINILLA** and **Co-Conspirator 1** were purchasing each kilogram of heroin for approximately $40,000.00.

**PINILLA** and **Co-Conspirator 1** arranged for **Arechiga** to drive his own vehicle across the country with heroin purchased by **PINILLA** and **Co-Conspirator 1**.  Upon arrival in Maryland, **Arechiga** would stay at a hotel in College Park, Maryland and then contact **PINILLA** and **Co-Conspirator 1**, who would pick him up and bring him to a house to complete the sale of drugs.  On at least six occasions, **Arechiga** transported heroin from the source of supply in California to **PINILLA** and **Co-Conspirator 1** in Maryland.  On at least one occasion, **Arechiga** transported drug proceeds from **PINILLA** and **Co-Conspirator 1** in Maryland to the source of supply in California.

On May 15, 2009, **Arechiga** arrived in Maryland with two kilograms of heroin which he planned to deliver to **PINILLA** and **Co-Conspirator 1**.  **Arechiga** met **PINILLA**, **Co-Conspirator 1** and another male at a hotel in College Park, in Maryland.  **Arechiga** placed a backpack into **PINILLA** and **Co-Conspirator 1's** car.  The group, including **PINILLA**, **Arechiga**, **Co-Conspirator 1**, and another male, left the hotel and were stopped by law enforcement officers a short distance away.  Law enforcement retrieved the backpack from the trunk of the car and found that it contained two kilograms of heroin, an unloaded Firestorm .45 caliber compact semiautomatic pistol, bearing serial number 71-04-07130-03, and an accompanying magazine.  The firearm and magazine did not belong to **PINILLA**.

In total, based on the length, type, and scope of her involvement with the conspiracy and her relationships with the co-conspirators, at least 1 kilograms of heroin, but less than 3 kilograms of heroin, were reasonably foreseeable to **PINILLA**.

### III.     Statutory Sentencing Factors Under 18 U.S.C. § 3553(a)

A district court must "begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007).  After calculating the range, it must consider the § 3553(a) factors before imposing the sentence.  *Id*. at 49–50.

3

The statutory factors for the Court's consideration under 18 U.S.C. § 3553(a) include: (1) the nature and circumstances of the offense and history and characteristics of the defendant, and (2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford deterrence, protect the public and provide the defendant with needed services. "In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." U.S.S.G. § 1B1.4; *see also* 18 U.S.C. § 3661. The district court is given "some latitude," and "a degree of deference," to tailor a particular sentence to the circumstances. *United States v. Green*, 436 F.3d 449, 456-57 (4th Cir. 2006); *United States v. Moreland*, 437 F.3d 424, 433 (4th Cir. 2006).

The Government submits that, in light of the Defendant's age and health, a sentence of 60 months of imprisonment is the appropriate sentence in this case even though that sentence is below the applicable Guidelines range.

***Total Offense Level:*** The Government agrees with Probation's calculation of the advisory U.S. Sentencing Guidelines calculations as reflected in the PSR. *See* PSR ¶¶ 17–28. And the calculations in the PSR are the same as in the parties' Plea Agreement. *See* ECF 91, ¶ 6.

The Defendant's Base Offense Level is 32, pursuant to U.S.S.G. §§ 2D1.1(a)(5) and 2D1.1(c)(4), because the quantity of the controlled substance involved in the underlying offense was at least three kilograms but less than ten kilograms. These offenses group for sentence calculation purposes, pursuant to USSG § 3D1.2(d).

A two-level enhancement also applies, pursuant to U.S.S.G. § 2D1.1(b)(1), because the Defendant possessed a firearm.

4

While a significant period of time has elapsed between the Defendant's indictment and eventual arrest, the Government agrees with Probation that any obstruction of justice enhancement under U.S.S.G. § 3C1.1 is inapplicable here. PSR ¶ 23. As noted under Application Note 5(D), avoiding or fleeing from arrest is a type of conduct that generally does not warrant application of this enhancement.

The Government agrees to a two-level reduction in the Defendant's adjusted offense level based on her acceptance of personal responsibility, pursuant to U.S.S.G. § 3E1.1(a). The Government also agrees to a one-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(b), because the Defendant timely notified the Government of her intention to plead guilty, under U.S.S.G. § 3E1.1(b).

Thus, as agreed upon in the Plea Agreement and set forth in the PSR, the Defendant's total offense level is 31.

***Criminal History Category:*** The Government agrees with the PSR that the Defendant's criminal history category is III. PSR ¶ 35.

***Guidelines Range:*** Taken together, with an adjusted offense level of 31 and a criminal history category of III, the Government agrees with Probation that the Defendant's advisory guidelines range is of 135 to 168 months. PSR ¶ 88.

### IV.     The Government's Sentencing Recommendation

The Government respectfully submits that a sentence of 60 months' imprisonment, followed by four years of supervised release, will be sufficient, but not greater than necessary, in light of the factors articulated in § 3553(a).

***Nature and Circumstances of the Offense:*** The nature and circumstances of this offense warrant a significant term of imprisonment. The Defendant—who was on supervised release for

a 2005 felony conviction before this Court for conspiracy to produce and transfer identification documents—knowingly and intentionally, in partnership with her co-conspirators, transported kilogram quantities of heroin across state lines.  Indeed, this Court has routinely recognized the devastating impact of heroin trafficking in Maryland.  *See United States v. Brown,* Criminal No. JKB-08-415, 2023 WL 8653179, at *5 (D. Md. Dec. 13, 2023) (noting that "heroin is a highly addictive, deadly, and illegal substance," and "the Court takes notice of the fact that narcotics trafficking has ravaged neighborhoods and led to devastating violence in Baltimore").

*History and Characteristics:*  A 60-month term of incarceration is also justified by the Defendant's criminal history, as well as her flight to and residence in Panama for over a decade in order to avoid criminal prosecution.

The Government, however, acknowledges that none of the Defendant's prior convictions involve illicit drugs or violence.  In addition, since the Defendant's indicted conduct in this case, she has not been charged with any additional crimes, has pursued higher education, and has been diagnosed with serious health conditions.  If sentenced to 60 months of imprisonment and four years of supervised release, the Defendant would be in her mid-60s upon release from prison and almost 70 after her term of supervised release, diminishing the value of any specific deterrence.

*Respect for the Law, Deterrence, and Public Safety:*  As described above, the nature and circumstances of the Defendant's offense are extremely serious and require a sentence that promotes respect for the law, provides just punishment for the offense, affords adequate deterrence, and protects the public from further crimes of the Defendant.  As set forth in the PSR, to date, the Defendant's longest term of imprisonment was 15 months of imprisonment for conspiracy to produce and transfer identification documents.  PSR ¶ 34.  The Government's recommended sentence of 60 months' imprisonment is four times the length of this prior sentence

which would serve to deter the Defendant from future criminal behavior. The lengthy prison term will also serve to generally deter individuals in the public at large who are considering committing similar crimes. Additionally, the lengthy term of supervised release recommended will further serve to deter the Defendant from future criminal conduct and will protect the public from future crimes of the Defendant.

## V.      Conclusion

For the foregoing reasons, and any additional information that may be presented at the sentencing hearing, the Government respectfully requests that the Court impose a **term of imprisonment of 60 months, to be followed by a term of supervised release of four years.**

Respectfully submitted,

Erek L. Barron
United States Attorney

_____/s/_____
Joel Crespo
Kelly O. Hayes
Assistant United States Attorneys